The document below is hereby signed.

Signed: August 16, 2019



_S. Martin Teel Jr._

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| PIERRE PHILIPPE BARKATS, | ) | Case No. 14-00053 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ———————————————— | ) | |
| WENDELL W. WEBSTER, CHAPTER 7 | ) | |
| TRUSTEE FOR THE ESTATE OF | ) | |
| PIERRE PHILIPPE BARKATS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adversary Proceeding No. |
| RONDI WALKER, _et al._, | ) | 18-10021 |
| | ) | |
| Defendants. | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER RE
MOTION OF MICHELLE ETLIN TO INTERVENE IN ADVERSARY
PROCEEDING AND TO JOIN DEBTOR PIERRE BARKATS AS A DEFENDANT

An unsecured creditor, Michelle Etlin, has filed a _Motion to
Intervene in Adversary Proceeding and to Join Debtor Pierre
Barkats as a Defendant_ (Dkt. No. 99) wherein Etlin seeks to
intervene in this adversary proceeding to challenge the validity
of the Marital Settlement Agreement, entered into by the debtor,
Pierre Philippe Barkats, and the debtor's former wife, Rondi

Walker; to challenge the lien ("Ingram Lien") on the property
located at 3241 Woodland Drive, NW, Washington, D.C. 20008, (the
"Property"), held by Gregory Ingram, Francis Louvard, and Francis
Legarde (collectively the "Ingram Creditors"); and to join the
debtor as a defendant in this adversary proceeding and to assert
claims against the debtor and Walker.  For the reasons stated
below, the motion will be denied.

I

FACTS

The underlying bankruptcy case, Case No. 14-00053, was
initiated by the filing of an involuntary petition under chapter
7 of the Bankruptcy Code, on January 30, 2014, by certain
unsecured creditors, including Laura Zaporjan.  The *Order for
Relief* was entered on February 27, 2014.  Wendell W. Webster was
appointed to serve as chapter 7 trustee on August 6, 2015.  The
Property constitutes the only asset of the bankruptcy estate.

The debtor and Walker owned the Property as tenants in the
entirety until their divorce on May 14, 2012.  They entered into
a Marital Settlement Agreement on April 20, 2012, that, among
other things, provided for the sale of the Property and the
distribution of the proceeds of the sale to pay certain debts.
The Marital Settlement Agreement was incorporated into the
divorce decree.  Accordingly, after the divorce, they continued
to have interests in the Property, as specified by the Marital

Support Agreement.

The Ingram Lien is one of several liens on the Property.  On September 12, 2011, the debtor signed an Acknowledgement (sic) of Debt and an Irrevocable Letter of Instruction, whereby the debtor acknowledged debts owed to the Ingram Creditors.  The debtor signed a confession of judgment that was entered on February 13, 2012, in the Superior Court of the District of Columbia in favor of the Ingram Creditors.  The judgment was recorded in the Official Records of the Washington, DC Recorder of Deeds, as a lien on the Property on February 22, 2012.  The judgment was amended twice *nunc pro tunc*.  The judgment was entered against the debtor only, and not against Walker.

Upon the divorce, the debtor and Walker ceased to be tenants by the entirety.  The trustee previously argued in a proceeding in the main case that the Ingram Creditors had no lien on the Property because the debtor's tenancy by the entireties ownership interest could not be encumbered at the time the judgment lien was recorded.  I ruled that whatever interest the debtor obtained by reason of the divorce became subject to the Ingram Lien.  The Ingram Creditors filed a counterclaim in this adversary proceeding asserting that the divorce resulted in the debtor and Walker being tenants in common, each having a 50% interest, but there is a question whether the Marital Settlement Agreement controls what percentage the debtor owns, with there never having

3

been a point at which, by reason of the divorce, each of the
former spouses owned a 50% interest as tenants in common.

On March 28, 2016, the United States Trustee filed a
complaint, initiating Adversary Proceeding No. 16-10011, wherein
the United States Trustee sought a denial of chapter 7 discharge
against the debtor for the debtor's misconduct in the underlying
bankruptcy case.  A default judgment was entered on October 25,
2016, denying the debtor a discharge under chapter 7.

The trustee filed a complaint initiating this adversary
proceeding on August 9, 2018.  In the complaint, the trustee
sought to sell the Property free and clear of the co-owner's
interest, to avoid the transfer of the debtor's interest in the
property under the Marital Settlement Agreement, and to obtain a
determination of the validity and priority of liens on the
Property.  The court entered a judgment on October 22, 2018,
authorizing the sale of the Property free and clear of the co-
owner's interest, but dismissed the claim regarding the Marital
Settlement Agreement as barred by the statute of limitations
under 11 U.S.C. § 546(a).  All that remains under the complaint
is to determine the extent of the respective interests of the
debtor and Dr. Walker in the Property and to determine the amount
and priority of the liens on the respective interests of the
debtor and Dr. Walker in the Property.

On May 31, 2019, Etlin filed her *Motion to Intervene in*

4

*Adversary Proceeding and to Join Debtor Pierre Barkats as a Defendant.* Etlin is an unsecured creditor as the assignee of Laura Zaporjan's unsecured claim. Etlin seeks to intervene to challenge the Marital Settlement Agreement, to hold Walker and the debtor liable for colluding in that regard, and to challenge the Ingram Lien as fraudulent or as subject to subordination. Walker filed an opposition contending that Etlin has not shown she is not adequately represented by the trustee, who has a fiduciary duty to represent the interests of unsecured creditors, including Etlin. Additionally, another defendant, Democracy Capital Corporation, which has a lien against Dr. Walker's interest in the Property, has filed an opposition endorsing Walker's objection to Etlin's intervening, and asserting as an additional reason to deny the motion that Etlin is barred from challenging the Marital Settlement Agreement, if not also the Ingram Lien,[1] as a violation of the *Rooker-Feldman* Doctrine. The trustee has filed a response asserting that the trustee has exercised sound business judgment by avoiding contested litigation and thereby has maximized the value of the estate's interest in the Property. However, the trustee supports Etlin's intervention, insofar that she may be able to provide relevant information to determine the value of the liens attached to the

---

[1] The Ingram Lien has no impact on Democracy Capital's rights against Walker's interest in the Property.

Property.

Etlin filed a timely reply on August 8, 2019, to the oppositions.

## II

### FED. R. CIV. P. 24 REGARDING INTERVENTON

A party seeking to intervene must qualify for intervention under Fed. R. Civ. P. 24, made applicable by Fed. R. Bankr. P. 7024.  Under Rule 24, there are two types of intervention: intervention of right and permissive intervention.  For intervention of right, Rule 24 provides:

> (a) Intervention of Right.  On timely motion, the court must permit anyone to intervene who:
>
> > (1) is given an unconditional right to intervene by a federal statute; or
> >
> > (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Where, as here, there is no statutory right to intervene, there are four elements, all of which must be met, including: 1) timely motion, 2) an interest, 3) impairment of that interest, and 4) inadequate representation.  Generally, a showing of inadequate representation is not onerous.  *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986).  However, a party's burden to show inadequate representation "is at its most onerous where an

existing party is under a legal obligation to represent the interests asserted by the putative intervenor." *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1142 (1st Cir. 1992). A showing of inadequate representation in such cases requires a showing of "a conflict of interest, collusion, or nonfeasance on the part of the chapter 7 trustee." *Id.* at 1144. "[A]n existing party who is ineffectual, incompetent, or unwilling to raise claims or arguments that would benefit the putative intervenor may qualify as an inadequate representative in some cases," but "'[a] mere difference of opinion concerning the tactics with which litigation should be handled does not make inadequate the representation of those whose interests are identical with that of an existing party or who are formally represented in the lawsuit.'" *Jones v. Prince George's County Maryland*, 348 F.3d 1014, 1019-20 (D.C. Cir. 2003) (quoting 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1909, at 344 (2d ed.1986)).

Etlin also seeks permissive intervention. Rule 24(b)(1) provides:

(b) Permissive Intervention

(1) In General. On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by a federal statute; or

(B) has a claim or defense that shares with the main action a common question of law or fact.

7

Rule 24(b)(3) also requires the court to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

Etlin does not have a conditional right to intervene by a federal statute, and therefore permissive intervention is unavailable unless she shows that she "has a claim or defense that shares with the main action a common question of law or fact."

III

INTERVENTION IS UNWARRANTED AS TO
CLAIMS THAT ARE NOT VIABLE OR THAT DO NOT
BEAR ON THE CLAIMS BEING LITIGATED IN THIS ADVERSARY PROCEEDING

Etlin ought not be allowed to intervene as to claims that do not bear on the issues being litigated in this adversary proceeding or that this court would have to dismiss.

A.

*Claims Against the Debtor and Dr. Walker*

Even if the court disregards the issue of standing of a creditor to pursue avoidance powers vested in the trustee, the court has already ruled that such claims to avoid the transfer effected by the Marital Settlement Agreement are time-barred. Claims to avoid the Ingram Lien under avoidance powers vested in the trustee would similarly be time-barred.  If, despite the time-barred nature of avoidance claims, Etlin could somehow be entitled to obtain a monetary judgment against Walker or the

debtor for conduct leading to the Marital Support Agreement or
the Ingram Lien, such claims do not bear on the claims in this
adversary proceeding, and, in any event, this court lacks subject
matter jurisdiction to hear such claims.

What remains in this adversary proceeding concerns the
extent of the debtor's and Dr. Walker's respective interests in
the Property and the extent, validity, amount, and priority of
liens against those interests, not the extent of any liability of
the debtor or Walker to creditors for colluding in putting assets
beyond their reach or any liability of the debtor for conduct
resulting in the Ingram Lien.

This adversary proceeding would not in any way be benefitted
by allowing Etlin to intervene to sue the debtor or Walker on
such claims.  Even should Etlin succeed in pursuing such tort
claims, the recovery of a judgment would not remove or decrease
any of the liens on the Property.  Therefore, resolution of such
tort claims against the debtor or Walker would serve no purpose
in determining the validity or priority of the liens on the
Property.  In other words, with respect to her claims against
Walker and the debtor, Etlin has not shown in this regard that,
within the language of Rule 24(a)(2) governing intervention of
right, she "claims an interest relating to the property or
transaction that is the subject of the action, and is so situated
that disposing of the action may as a practical matter impair or

impede [her] ability to protect [her] interest."  Nor, within the language of Rule 24(b)(1)(B) governing permissive intervention, has she presented "a claim or defense that shares with the main action a common question of law or fact," as the determination of the extent, amount, and priority of liens have nothing to do with her claims against the debtor and Dr. Walker such as to present, within the meaning of Fed. R. Civ. P. 24(b)(1)(B), "a claim or defense that shares with the main action a common question of law or fact."  Even if they did, such claims would create a side-show that will unduly delay or prejudice the adjudication of the original parties' rights: litigating the pursuit of a judgment for monetary damages against the debtor or Walker would gum up the works of determining the straight-forward issues of determining the extent, amount, and priority of liens against the Property.

Moreover, Etlin is not entitled to intervene to pursue such claims as the court does not have subject matter jurisdiction over claims against Walker or the debtor for allegedly engaging in conduct that placed assets beyond the reach of the debtor's unsecured creditors or led to the existence of the Ingram Lien. Bankruptcy courts are courts of limited jurisdiction.  *Porter Capital Corporation v. Hamilton (In re Hamilton)*, 282 B.R. 22, 25 (Bankr. W.D. Okl. 2002).

Section 1334(b) provides that the court has jurisdiction over "all civil proceedings arising under title 11, or

10

arising in or related to cases under title 11." Cases
arise under title 11 when "a claim is made under a
provision of title 11." Collier on Bankruptcy
¶ 3.01[3][e][i] (quoting H.R. Rep. No. 595, 95th Cong.,
1st Sess. 445 (1977) ). Essentially, these are cases
where the cause of action is created by title 11. Arise
in jurisdiction, on the other hand, relates to cases with
"'administrative' matters that only arise in bankruptcy.
In other words, 'arising in' proceedings are those that
are not based on any right expressly created by title 11,
but nevertheless, would have no existence outside
bankruptcy." *In re Wood*, 825 F.2d 90, 96–97, (5th Cir.
1987). Finally, related to proceedings are cases where
"the outcome of the proceeding could conceivably have an
effect on the estate being administered in bankruptcy."
*Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)
overruled in part by *Things Remembered, Inc. v. Petrarca*,
516 U.S. 124 (1995).

*Majidy v. Bello (In re Bello)*, No. 17-10035, 2018 WL 1882910, at

*2 (Bankr. D.D.C. April 17, 2018).

The claims against Walker and the debtor that Etlin seeks to

pursue are not claims arising under the Bankruptcy Code, or

arising in the bankruptcy case. Neither are they claims "related

to" a bankruptcy case. The administration of the estate would

not be affected regardless of the outcome of such an action.

Even if Etlin won, the only relief that could be granted would be

damages to Etlin for the shortfall in collecting her claim in the

bankruptcy case by reason of Walker's and the debtor's alleged

misconduct. The estate would not recover any of such damages

awarded to Etlin. The action would not increase estate assets or

funds, nor would such an outcome even decrease any liabilities of

the estate, because Etlin's claim against the estate would not

11

decrease should she win a judgment against Walker or the debtor.[2] As to both Walker and the debtor, the court lacks subject matter jurisdiction over the collusion damage claims Etlin seeks to pursue. Accordingly, I will not allow intervention to pursue such claims.

Any such cause of action Etlin may have against Walker or the debtor for such damages ought to be brought in a court of competent jurisdiction. Etlin could bring such a cause of action against the debtor in state court at any time because, pursuant to 11 U.S.C. § 362(c)(2), the denial of discharge terminated the automatic stay regarding suing the debtor.[3]

---

[2]   Etlin's suing the debtor for diminishing what Etlin could have recovered from the estate but for his alleged misconduct would duplicate the claim already filed against the estate and assigned to her. The court has subject matter jurisdiction to hear disputes concerning claims against the debtor when asserted as claims against the estate, pursued via filing a proof of claim in the main case. Etlin's claim asserted in the proof of claim is already an allowed claim because no one has objected to the proof of claim, and it will remain such unless someone files an objection to the proof of claim. In contrast to filing a proof of claim against the estate, pursuit of an action to recover a *judgment against the debtor* would serve no purpose under the Bankruptcy Code, and thus is a claim over which this court lacks subject matter jurisdiction.

[3]   To sue the debtor, Etlin is not required first to bring a proceeding in this court for a determination of nondischargeability (a proceeding in which determining the debt and its amount would arise incident to the proceeding and thus arguably be a matter arising in the case for subject matter jurisdiction purposes).

B.

*Intervention to Attack the Marital Settlement Agreement*

Etlin seeks to intervene to challenge the validity of the Marital Settlement Agreement. Intervention for that purpose must be denied because Etlin has not provided a claim for which relief can be granted. Therefore, there is no reason why the court should permit her to intervene to challenge the Marital Settlement Agreement.

This court has already dismissed as time-barred the trustee's claim to avoid, as a fraudulent conveyance, the transfer effected by the Marital Settlement Agreement, and even if Etlin has standing to pursue such an avoidance claim, she is similarly time-barred from attacking the Marital Settlement Agreement as a fraudulent conveyance. Etlin nevertheless argues that the debtor and Walker fraudulently entered into the Marital Settlement Agreement, and seeks to have the Marital Settlement Agreement voided as a fraud against the Superior Court. However, this type of challenge can only be made by a Rule 60 motion under the Superior Court analog of Fed. R. Civ. P. 60, because such a motion "is a direct attack, brought in the same case and before the same court that entered the offending judgment." *In re Acorn Hotels, LLC*, 251 B.R. 696, 700 (Bankr. W.D. Tex. 2000). This follows because, under 11 U.S.C. § 541(a), the bankruptcy estate (through which Etlin could potentially obtain a recovery pursuant

13

to her allowed claim against the estate) has no greater rights
regarding the Property than the debtor has regarding the
Property, unless the Bankruptcy Code or other federal law creates
a right to disregard the Superior Court judgment approving the
Marital Settlement Agreement.  Etlin points to no such viable
right.  The trustee stands in the shoes of the debtor, and for
purposes of res judicata (claim preclusion) is in privy with the
debtor as a successor to the debtor's interests, with respect to
what property the debtor owns that, by reason of § 541(a), has
become property of the estate.  *See Sender v. Simon*, 84 F.3d
1299, 1305 (10th Cir. 1996) (trustee stands in the shoes of the
debtor, takes no greater rights than the debtor had, and is thus
subject to the same defenses, including res judicata); *In re
WorldCom, Inc.*, 401 B.R. 637, 651 (Bankr. S.D.N.Y. 2009) ("a
trustee is a successor to the property interests of the debtor,
thereby placing them in privity"); *Keller v. Keller (In re
Keller)*, 185 B.R. 796, 800 (9th Cir. B.A.P. 1995) (trustee was
bound, because of res judicata, by judgment of state family law
court as to division of ownership of property).  Pursuant to 11
U.S.C. § 541(a)(3) and (4), the estate also includes any interest
in property that the trustee recovers or preserves for the
benefit of the estate under §§ 550 and 551 of the Bankruptcy
Code, including property recovered by exercise of the trustee's
avoidance powers in Chapter 5 of the Bankruptcy Code.  However,

14

any avoidance action is time-barred.  Accordingly, for purposes
of the debtor's bankruptcy case, the trustee stands in the shoes
of the debtor regarding what is property of the estate.  Under
the doctrine of res judicata (claim preclusion), the debtor, and
thus the bankruptcy trustee and creditors, are barred in this
case from challenging the validity of the Superior Court
judgment.  That judgment is thus binding on the estate (and on
Etlin as a creditor of the estate).  Therefore, any attack on the
Marital Settlement Agreement as a fraud on the Superior Court
must be brought in the Superior Court, not in this adversary
proceeding.[4]

Etlin states that the Marital Settlement Agreement was
incorporated, but not merged with the divorce decree.  If Etlin
is contending that the Marital Settlement Agreement, having not
been merged with the divorce decree, is not a final decree, then
Etlin is mistaken.  Because the Marital Settlement Agreement is
incorporated into the divorce decree, it is a final order, and
can only be challenged by a Rule 60 motion in the Superior Court.

Etlin has stated no claim against the effectiveness of the
Marital Settlement Agreement for which relief can be granted in
this court.  Accordingly, neither intervention of right nor
permissive intervention is appropriate in regard to that issue.

---

[4]  Whether Etlin would have standing to pursue such a motion
in the Superior Court would be for the Superior Court to decide.

15

C.

*Claims Attacking the Validity of the Ingram Lien*

Etlin also seeks to challenge the validity and
enforceability of the Ingram Lien.  I defer addressing whether
Etlin has stated a claim to equitably subordinate the claim
secured by the Ingram Lien, a claim that is not an attack on the
validity of the Ingram Lien.  As to Etlin's attack on the
validity of the Ingram Lien, Etlin has not stated a claim upon
which relief may be granted.  Accordingly, the court will deny
granting intervention to challenge the validity of the Ingram
Lien.

Etlin contends that the Ingram Lien is "void *ab initio*,
either because the DC Superior Court lacked subject matter
jurisdiction over the claims or because the claims themselves are
invalid or unenforceable."  However, to the extent that this is
an avoidance action against the Ingram Lien as a fraudulent
transfer, the statute of limitations, as already discussed above,
has expired for all avoidance actions, including fraudulent
avoidance actions under 11 U.S.C. § 548.[5]  To the extent this is
a challenge of the Superior Court's judgment, entered pursuant to
a consent to judgment signed by the debtor, that challenge to the

---

[5]   The trustee is vested with the authority to pursue a
§ 548 action, and in light of the bar of the statute of
limitations, I would not grant Etlin permission to sue in lieu of
the trustee.

16

validity of the Superior Court judgment is not proper in this
court for the same reasons that the validity of the *Marital
Support Agreement* cannot be attacked in this court.  The Superior
Court judgment is binding on this court as a matter of res
judicata (claim preclusion) because the estate's interest in the
Property as an asset encumbered by the Ingram Lien is no greater
than the debtor's, and the validity of the Superior Court
judgment upon which the Ingram Lien is based is not subject to
attack here.

The debtor was residing in France when the Superior Court
entered the judgment in favor of the Ingram Creditors.  Etlin
asserts that the debtor's submission of himself to the
jurisdiction of the Superior Court could not confer subject
matter jurisdiction on the Superior Court.  However, the judgment
necessarily was based on there being subject matter jurisdiction.
Any challenge that Etlin has regarding the validity of the
judgment of the Superior Court must be made as a Rule 60 motion
in the Superior Court.  The same is true of the assertion that
the debtor merely made up the existence of a debt to the Ingram
Creditors.  The judgment necessarily determined that a debt
existed.

Etlin contends that this court has the authority to "look
behind the state court Ingram judgment that gave rise to the
Ingram judgment-lien, in order to determine the nature of the

debts themselves." However, the cases cited by Etlin are nondischargeability actions. The court may look at the creation of any debt to determine whether such debt is nondischargeable under 11 U.S.C. § 523 even if the judgment did not impose liability based on grounds that would make the judgment nondischargeable. That, however, does not give the court the authority to avoid liens because a state court's judgment was allegedly obtained by fraud. Any challenge to the validity of the Superior Court judgment must be pursued in the Superior Court. Etlin does not contend that the judgment in favor of the Ingram Creditors was not recorded in accordance with District of Columbia law such as to give rise to a judgment lien, the Ingram Lien, effective under District of Columbia law to reach whatever interest the debtor had or acquired in the Property.

Etlin brings a challenge under 11 U.S.C. § 506(d). However, § 506(d) does not apply here. Section 506(d) provides:

> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
>
> (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
>
> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

Etlin asserts that under § 506(d), the Ingram Lien is void to the extent that the lien is disallowed. However, Etlin has not

18

asserted any basis for disallowing the Ingram Lien, except
perhaps that the Ingram Creditors did not timely file a proof of
claim.  However, pursuant to § 506(d)(2), claims that are
disallowed because of a failure to file a proof of claim are not
made void under § 506(d).

Etlin could challenge how much is owed on the Ingram Lien,
after taking into consideration payments the Ingram Creditors
received post-judgment and the reasonableness of any attorney's
fees, if attorney's fees are recoverable.  However, such a
challenge was not specifically made in Etlin's proposed
complaint-in-intervention, and, moreover, the trustee (who is the
representative of the estate) is tasked with addressing that
issue, and Etlin has not shown that the trustee will not
adequately represent her interests in that regard.  Nevertheless,
the trustee has not opposed Etlin's intervening.  In an attempt
to challenge the Ingram Creditors' judgment, Etlin points to
there being no notes reflecting loans by the Ingram Creditors,
but the judgment is binding on the estate.  Nevertheless, this
presents an issue as to whether attorney's fees incurred post-
judgment are recoverable, as ordinarily such fees are recoverable
only if there was a contract providing for the recovery of such
fees.  However, Etlin's proposed complaint-in-intervention goes
on practically forever, and includes various claims that I have
ruled earlier in this decision are inappropriate for her to

19

assert via intervention.  Permitting Etlin to intervene via
filing that complaint-in-intervention would prejudice the orderly
disposition of this adversary proceeding.  If Etlin wants to
intervene to participate in challenging the amounts owed on the
Ingram Lien, she may file a motion to intervene that attaches an
answer to the complaint and a cross-claim against the Ingram
Creditors raising a challenge that the Ingram Creditors be
required to establish the amounts they are owed on the Ingram
Lien, including disclosing payments the Ingram Creditors received
post-judgment, establishing their entitlement to recover post-
judgment attorney's fees, and the reasonableness of any
attorney's fees that are recoverable.

IV

SUBROGATION OF THE INGRAM CREDITORS' CLAIM

Etlin also asks that the Ingram Lien be subordinated
pursuant to 11 U.S.C. § 510(b).  However, § 510(b) is a
codification of the principle that shareholders are paid after
creditors.  *See In re American Wagering, Inc.*, 493 F.3d 1067,
1071 (9th Cir. 2007).  The debtor's case is that of an
individual, not a corporation.  The Ingram Creditors are not
shareholders, neither is the Ingram Lien a shareholder claim, and
§ 510(b) does not apply to the Ingram Lien.  Understandably, the
Ingram Creditors saw no need to oppose intervention to permit
pursuit of relief under § 510(b), relief that is plainly

20

unavailable.

Etlin may have meant to seek equitable subordination of the
Ingram Creditors' claims under 11 U.S.C. § 510(c).  She would
have standing to pursue such relief, although such relief might
be limited to protecting her own claim and not the claims of
other unsecured creditors.  *See In re Vitreous Steel Prods. Co.*,
911 F.2d 1223, 1231 (7th Cir. 1990).  Res judicata may not bar
pursuit of equitable subordination.  *Minnesota Corn Processors,
Inc. v. American Sweeteners, Inc. (In re American Sweeteners,
Inc.)*, 248 B.R. 271, 279-80 (Bankr. E.D. Pa. 2008).  However,
Etlin's proposed 23-page complaint-in-intervention is not limited
to allegations bearing on seeking equitable subordination of the
Ingram Creditors' claim, and was not drafted as an answer to the
plaintiff's complaint with a cross-claim against the Ingram
Creditors, the entities against whom equitable subordination
would apply.  Because Etlin only identified subordination under
§ 510(b), the Etlin Creditors understandably did not address
whether Etlin's allegations would state a claim under § 510(c)
that would pass muster under Fed. R. Civ. P. 12(b)(6) to state a
claim upon which relief can be granted.  Without the benefit of
the Ingram Creditors' views, I decline to attempt to undertake
evaluating the elements of a claim for equitable subordination
and whether Etlin's somewhat speculative allegations would
suffice to state such a claim pursuant to those elements.  I will

not permit intervention on the basis that Etlin's allegations
might support a claim for equitable subordination.

However, if Etlin decides to pursue such equitable
subordination under § 510(c), available remedies could affect the
disposition of the proceeds of the sale of the Property that are
subject to the Ingram Lien and include under § 510(c)(2) the
possible remedy of ordering the lien securing the subordinated
claim to be transferred to the estate.  It makes sense that if
Etlin decides to pursue relief under § 510(c), she be allowed to
pursue such a claim in this adversary proceeding in which the
trustee is attempting to obtain a determination of which lienors
receive the proceeds of a sale of the Property.  I will deny the
motion to intervene, but will permit Etlin to file a new motion
to intervene to file an answer, with a cross-claim against the
Ingram Creditors for equitable subordination under § 510(c).

V

PARTICIPATION AS AMICUS CURIAE

Etlin contends that the trustee has recommended that she
intervene, and the trustee states in his response to Etlin's
*Motion to Intervene in Adversary Proceeding and to Join Debtor
Pierre Barkats as a Defendant* that "to the extent that Ms. Etlin
is privy to information relevant to a determination of the value
and extent of liens asserted against the subject property, the
Trustee has no objection to Ms. Etlin's motion to intervene in

22

this action to contest the validity and extent of any liens
asserted against the property." However, permitting Etlin to
intervene, pursuant to her instant motion, as to matters as to
which the trustee is already representing the interests of the
estate, is unwarranted (except that, as discussed previously,
Etlin might be entitled to seek permissive intervention as two
issues regarding the Ingram Creditors' claims). Nevertheless, I
will permit Etlin to be heard as an amicus curiae to present her
views in this case, including, for example, the legal issue of
the interpretation of the Marital Settlement Agreement as to what
percentage ownership the debtor has in the Property. *See Stuart
v. Huff*. 706 F.3d 345, 355 (4th Cir. 2013). Moreover, the
trustee is always free to call Etlin as a witness at any
evidentiary hearing or trial, where she may testify on any
relevant facts that would permit the court to determine the
extent of the debtor's ownership interest in the Property and the
validity, extent, amount, and priority of the various liens on
the Property, including the Ingram Lien.

For all these reasons, it is

ORDERED that Etlin's *Motion to Intervene in Adversary
Proceeding and to Join Debtor Pierre Barkats as a Defendant* (Dkt.
No. 99) is DENIED except that:

(1) this is without prejudice to a new motion to
intervene if Etlin decides to seek to challenge the amounts

23

owed on the Ingram Lien (treated as based on a valid

judgment) or to pursue relief under 11 U.S.C. § 510(c); and

    (2) Etlin is permitted to appear in this proceeding as

an amicus curiae.

                    [Signed and dated above.]

Copies to: Recipients of e-notifications of orders;

Michelle Etlin
5345 Randopl Rd. #3
Rockville, MD 20852-2140

Michelle Etlin
8331 Meadowsweet Road
Pikesville, MD 21208