The document below is hereby signed.

Signed: May 14, 2020



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| PIERRE PHILIPPE BARKATS, | ) | Case No. 14-00053 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| WENDELL W. WEBSTER, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 18-10021 |
| RONDI WALKER, *et al.*, | ) | |
| | ) | Not for publication in |
| Defendants. | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER
REFLECTING RESULTS OF HEARING OF MAY 13, 2020
AND DIRECTING CANDELA CORPORATION TO FILE OBJECTIONS
<u>TO ANY OF THE COURT'S DIRECTIVES ARISING FROM THE HEARING</u>

This order reflects the results of the hearing of May 13, 2020, and updates the liens on Dr. Rondi Walker's interest in the

Property[1] in light of the District of Columbia's income tax liens not addressed by the *Memorandum Decision and Order re Motions for Summary Judgment* ("*Memorandum Decision*") (Dkt. No. 174) (dated March 31, 2020, and entered April 1, 2020).

I

RESPECTIVE SHARES OF PROCEEDS; DISTRIBUTIONS TO INGRAM GROUP

As of October 16, 2019, Webster held sale proceeds of $1,962,932.53. By agreement of Dr. Walker's counsel at the hearing, Dr. Walker's entitlement under the *Marital Settlement Agreement* to be reimbursed for loans standing at $463,000 at the time of execution of the *Marital Settlement Agreement* (loans that increased over time) is capped at $654,141.81.  That $654,141.81 amount was determined in the *Memorandum Decision* at 29-31.  I held in the *Memorandum Decision* at 32 that Dr. Walker is entitled to receive $1,545,442.74 ($891,300.93 outright and the $654,141.81 for the specified loans).  By a separate order I am denying Dr. Walker's motion to modify the *Memorandum Decision*.

An issue remained of whether the proceeds to be distributed must be reduced for the claim made by the purchaser of the Property for repairs.  However, Webster's counsel informed the court at the hearing that the parties have reached an agreement that:

---

[1] The former residence of Dr. Walker and Barkats, located at 3232 Garfield Street, N.W., Washington, D.C. (with a later changed address of 3241 Woodland Drive, N.W., Washington, D.C.).

2

>    (1) after dividing three ways the purchaser's asserted repairs claim of $26,050.93, Dr. Walker is to receive $1,532,425.77; the children's trust is to receive $167,240.58; and Webster (*i.e.*, Barkats' bankruptcy estate) is to receive $237,215.25;[2] but
>
>    (2) the figures would increase by eliminating the charge for repairs if Walker returns a chandelier to the purchaser.

Of whatever amount is paid to Webster, the Ingram Group would receive 75% pursuant to a prior order of the court. Accordingly, Webster should be able to make a distribution to the Ingram Group once the settlement is approved.  I suggest that the proposed order approving the settlement ought to specify:

>    (1) how much the Ingram Group is to receive if the repairs are eliminated as a charge; and
>
>    (2) how much it is entitled to receive if the claim for repairs is allowed; and
>
>    (3) how much it is to receive as an interim distribution pending resolution of the claim for repairs if the claim for repairs remains unresolved.

That way, a distribution can be made to the Ingram Group: either

---

[2] These three amounts and the $26,050.93 repair claim total $1,962,932.53, the amount Webster has on hand (or at least initially had on hand: interest may or may not have accrued on the funds).

an interim distribution, awaiting resolution of the repair issue, or a final distribution.

II

CLAIMS AGAINST WALKER'S SHARE

As to Walker's interest in the Property, there are these liens on the Property, filed with the District of Columbia Recorder of Deeds, that were held by the Internal Revenue Service ("IRS") and others:

1. **IRS:** tax lien filed on **August 20, 2014 at 8:32 a.m.**, for unpaid income taxes for the year 2012, standing at $181,307.89 as of November 4, 2019, and (per *United States' Updated Statement of Claims* (Dkt. No. 188)) standing at $186,613.77 as of June 2, 2020; and $187,380.10 as of July 2, 2020.

2. **IRS:** tax lien **filed on August 20, 2014, at 2:49 p.m.**, for unpaid income taxes for the year 2013, standing at $179,578.84 as of November 4, 2019, and (per *United States' Updated Statement of Claims* (Dkt. No. 188)) standing at $184,834.13 as of June 2, 2020; and $185,593.15 as of July 2, 2020.

3. **Democracy Capital Corporation**: Deed of Trust **filed on August 20, 2014, at 3:29 p.m.** securing a claim for $845,234.09 as of October 28, 2019, for a loan (the "Democracy Capital Loan"). Democracy Capital states in Dkt.

No. 189 that as of May 31, 2020, $876,741.31 is owed, consisting of:

    (a) $831,980.86 (amounts other than legal fees);

plus

    (b) $44,760.45 in legal fees.

Dr. Walker contests the attorney fees asserted as part of this claim.

    4. **Atlantic Union Bank** (successor to Access National Bank): Deed of Trust **filed on October 10, 2014**, securing a claim, originally for $150,000.00, standing at $199,482.73 as of September 4, 2019.  Atlantic Union Bank asserts in Dkt. No. 190 that as of May 31, 2020, $230,533.29 is owed on this lien, consisting of:

    (a) $182,146.27 (amounts other than legal fees);

plus

    (b) $48,387.02 in legal fees (as of March 16, 2020).

Dr. Walker will be objecting to the attorney's fees.

    5. **IRS**: tax lien **filed on July 21, 2015**, for the unpaid employment taxes for the period ending September 30, 2014, standing at $20,596.97 as of November 4, 2019, and (per *United States' Updated Statement of Claims* (Dkt. No. 188)) standing at  $21,199.73 as of June 2, 2020; and $21,286.78 as of July 2, 2020.

6. **District of Columbia**: tax lien **filed on September 20, 2016,** in the amount of $87,973.62 for income taxes and additions thereto for the years 2012 and 2013.  My research indicates that under D.C. Code § 47-4201(d)(2), the interest rate on unpaid taxes and penalties (other than an estimated tax penalty) is 10% per year, compounded daily.  The tax lien likely will stand at roughly at least $12o,000 as of June 2, 2020.[3]

7. **Candela Corporation**: *Judgment* **filed on June 26, 2017,** for a judgment of $76,284.72 entered by the Superior Court of the District of Columbia on September 16, 2016.

8. **IRS**: tax lien **filed on June 29, 2017,** for unpaid federal income taxes for the year 2014, standing at $20,934.99 as of November 4, 2019.[4]

9. **IRS**: tax lien **filed on November 9, 2018,** for the unpaid income taxes for the years 2015 and 2016, standing at, respectively, $36,044.20 and $10,711.30 as of November 4, 2019.

10. **Direct Capital Corporation**: *Judgment Order* **filed on August 6, 2019,** for a judgment entered by the Superior

---

[3] The District of Columbia states that its lien amounts to $119,430.76 in its *Motion for Clarification Regarding Court's Memorandum Decision and Order* (Dkt. No. 197) filed May 6, 2020.

[4] The United States states updated amounts for this lien and for the following tax lien in Docket No. 188, but the differences from these amounts are not material to the following discussion.

>Court on June 6, 2016, for $50,575.69 plus prejudgment interest of $738.76 and attorney's fees and costs of $1,500.00, for which Direct Capital Corporation asserts that $63,938.33 was owed as of February 5, 2020.

It is evident that as of June 2, 2020, if the legal fees of Democracy Capital and Atlantic Union are disallowed, only the first six liens will receive full payment out of Dr. Walker's share—of under $1,550,000—and only a small amount would be left to distribute to Candela Corporation for its lien exceeding $76,284.72:

| | |
|---|---|
| IRS | $186,613.77 |
| IRS | $185,593.15 |
| Democracy non-legal | $831,980.86 |
| Atlantic non-legal | $182,146.27 |
| IRS | $21,199.73 |
| D.C. | $120,000.00 (estimate) |
| **Total** | **$1,527,533.78** |

However, the Democracy Capital Corporation and Atlantic Union legal fees are:

| | |
|---|---|
| Democracy legal | $44,760.45 |
| Atlantic Union legal | $48,387.02 |
| **Total** | **$93,147.47** |

Dr. Walker is objecting to the legal fees. Even if only 50% of those legal fees are allowed, the D.C. tax lien of roughly $120,000.00 would not be paid in full:

|                        |                |
|------------------------|---------------:|
| IRS                    | $186,613.77    |
| IRS                    | $185,593.15    |
| Democracy non-legal    | $831,980.86    |
| 50% Democracy legal    | $22,380.23     |
| Atlantic non-legal     | $182,146.27    |
| 50% Atlantic legal     | $24,193.51     |
| IRS                    | $21,199.73     |
| **Total**              | **$1,454,107.52** |

After paying that $1,454,107.52 there would not be enough left to pay in full the D.C. tax lien of roughly $120,000.00. Candela Corporation and other junior liens would receive nothing from the proceeds of the sale. If the legal fees are allowed in full, the amount paid on the D.C. tax lien would be even less:

|                            |                |
|----------------------------|---------------:|
| IRS                        | $186,613.77    |
| IRS                        | $185,593.15    |
| Democracy (no atty. fees)  | $831,980.86    |
| 100% Democracy atty. fees  | $44,760.45     |
| Atlantic (no atty. fees)   | $182,146.27    |
| 100% Atlantic atty. fees   | $48,387.02     |
| IRS                        | $21,199.73     |
| **Total**                  | **$1,500,681.25** |

Because interest is accruing on the liens against Dr. Walker's share of the proceeds, it makes sense to make an interim distribution on the liens that have priority. Democracy Capital may or may not be agreeable to Atlantic Union receiving a payment (as there is a possibility that further proceedings in this adversary proceeding or in any appeal might substantially increase the legal fees Democracy Capital will incur). However, it will explore reaching an accommodation with Atlantic Union in that regard. At a minimum, it makes sense to direct that the first two IRS tax liens, and Democracy Capital's claim exclusive

of legal fees ought to be paid.

Candela Corporation did not appear at the hearing of May 13, 2020, and if it has any objection to any of the directives set forth in this order, it should file an objection by May 20, 2020.

In the meantime, it makes sense to determine the amount of legal fees Democracy Capital should be allowed. Dr. Walker represents that she needs no further discovery in that regard. Accordingly, I am setting her objection to Democracy Capital's legal fees for a hearing on May 21, 2020, at 2:00 p.m., with the parties to file a list of exhibits, with copies of the exhibits attached by May 15, 2020.

Dr. Walker will be filing an objection to Atlantic Union's legal fee claim by May 15, 2020, and Atlantic Union will respond by May 15, 2020, and I will hold a scheduling conference on that objection on May 21, 2020, at 2:00 p.m.

III

THE CHILDREN'S TRUST

The parties addressed whether the amount to be paid to Walker for the children's trust must be placed into an actual trust. Dr. Walker's counsel noted that section 5 of the *Marital Settlement Agreement* which required Dr. Walker and Barkats to "establish a trust or trusts for the benefit of their children using part of the proceeds of sale" as described earlier in the *Marital Settlement Agreement*, and required that "[a] person

9

mutually agreed upon by the parties will be the trustee for the trust(s)." In the *Memorandum Decision* at 53 I noted: "Based on the District of Columbia Court of Appeals' ruling, it appears that the funds must be placed in an actual trust, with Walker being entitled to assert a claim of reimbursement against the trust."  No argument was made at the hearing to persuade me that this is not the appropriate outcome.  Webster's counsel noted that the children are all now adults and suggested that there is an issue of whether no trust should be established because the children are no longer children but adults.  However, Webster has no standing to raise that issue (it does not affect Barkats' share of the proceeds).  More fundamentally, even if now adults, the children remain the children of Dr. Walker and Barkats; I expressed severe doubts that their being adults alters the requirement of establishing a children's trust; and none of the lien creditors suggested that this is a viable issue.

Dr. Walker's counsel indicated that she would be renouncing any right of contribution from the trust that is established. The IRS requested time to react to the consequences of that, *i.e.*, whether it can be effective against the IRS.  However, until a trust is established, there is nothing to address.

Moreover, whether the IRS and the District of Columbia could have a claim against the trust based on their liens having attached to Dr. Walker's right to reimbursement seems to me to be

10

an issue over which I will lack subject matter jurisdiction. The issues I am supposed to decide are who is entitled to receive the proceeds of the sale. The IRS and D.C. have no lien on proceeds payable to the trust at this juncture. Any right of the IRS and D.C. to reach funds that the trust is entitled to receive derives, first, from the trust's right to receive funds in the first place, and derives, second, from the IRS and D.C. having liens on Dr. Walker's right to reimbursement from whatever the trust receives out of the sale proceeds. However, Dr. Walker's right to reimbursement is not a lien on whatever the trust receives; it is only an unsecured claim. Once I decide what the trust is entitled to receive, there will not be any tax liens against the trust itself. There may be tax liens on Dr. Walker's right to reimbursement, but enforcement of such liens can be pursued elsewhere. If a notice of levy were served on the trust to collect whatever reimbursements are owed to Dr. Walker, that will occur after this court's ruling that the trust is entitled to a share of the proceeds. Enforcement of such a notice of levy or an action against the trust to set aside Dr. Walker's renouncing a claim of reimbursement as a fraudulent conveyance are matters beyond the limited issues I have jurisdiction to decide in this interpleader action: who is to receive the sale proceeds.

Nevertheless, I will direct Dr. Walker by May 27, 2020, to

11

file a copy of the trust instrument(s) executed to form the trust(s) and an indication of the entity who is to serve as trustee of the trust (or, if multiple trusts are established, the entities who are to serve as trustees of each of the trusts).

IV

CONCLUSION

In accordance with the foregoing, it is

ORDERED that the IRS and Democracy Capital Corporation shall submit a proposed order:

(1) for interim distributions on the IRS's first two liens and on Democracy Capital's lien but not including a distribution for attorney fees;

(2) to the extent agreeable to Democracy Capital Corporation, for an interim distribution, to Atlantic Union Bank, but not including payment of legal fees claimed by Atlantic Union Bank;

(3) to the extent agreeable to Democracy Capital Corporation and Atlantic Union Bank (evidenced by way of that lienor's endorsement of the proposed order), for interim distributions on the third IRS tax lien and the first District of Columbia tax lien.

It is further

ORDERED that *Defendant Rondi Walker's Opposition to the Lienholder's Claim for Attorney Fees* (Dkt. No. 152), objecting to

the attorney fees claimed by Democracy Capital Corporation:

    (1) is set, in light of the COVID-19 pandemic, for a telephonic trial (without witnesses unless the parties agree beforehand to witnesses appearing by telephone) on May 21, 2020, at 2:00 p.m.;

    (2) by May 21, 2020, the parties shall file their list of exhibits (numbers for Democracy Capital Corporation, letters for Dr. Walker) with the pre-marked exhibits attached thereto be attached to the list of exhibits; and

    (3) if witnesses are deemed necessary, the trial will be resumed at a later date.

It is further

    ORDERED that:

    (1) by May 15, 2020, Dr. Walker shall file an objection to the attorney fees asserted in Atlantic Union Bank's payoff statement (part of Dkt. No. 190);

    (2) by May 19, 2020, Atlantic Union Bank shall file a response to the objection; and

    (3) a telephonic scheduling conference regarding the objection to the attorney fees will be held on May 21, 2020, at 2:00 p.m.

It is further

    ORDERED that by May 27, 2020, Dr. Walker shall file a copy of the trust instrument(s) executed to form the trust(s) called

for by the *Marital Settlement Agreement* and a notice of the entity that is to serve as trustee of the trust (or, if multiple trusts are established, then a notice as to each trust of the entity that is to serve as trustee).  It is further

ORDERED that by May 20, 2020, Candela Corporation shall file any objection it has to the court's proceeding as set forth herein, including the court's making interim distributions as set forth above.

[Signed and dated above.]

Copies to: All counsel of record; Office of United States Trustee.