The document below is hereby signed.

Signed: June 9, 2020



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| PIERRE PHILIPPE BARKATS, | ) | Case No. 14-00053 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| WENDELL W. WEBSTER, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 18-10021 |
| RONDI WALKER, M.D., *et al.*, | ) | |
| | ) | Not for publication in |
| Defendants. | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER REGARDING
<u>LIENS AGAINST RONDI WALKER'S SHARE OF THE SALE PROCEEDS</u>

This order assumes that the reader is familiar with the court's prior *Memorandum Decision and Order re Motions for Summary Judgment* ("*Summary Judgment Decision*") and the court's *Memorandum Decision Regarding Rondi Walker's Motion to Reconsider* ("*Reconsideration Decision*"). Pursuant to the *Reconsideration*

*Decision* (agreeing with Walker that the court's *Summary Judgment Decision* erred in calculating Walker's share of the remaining sale proceeds), it appears that Walker's interest in those proceeds will come close to equaling the entire amount of those proceeds.  Even if Walker's share of the proceeds was responsible for paying all of the real estate taxes that Webster paid at closing, then as shown in the *Reconsideration Decision* at 30, it appears that based on the views this court has taken so far, Walker would recover $1,204,602.05 directly and $654,141.81 for paying off loans she had incurred, for a total of $1,858,743.86.[1] That sum is almost sufficient to satisfy the liens encumbering Walker's interest in the proceeds of the sale.

I

LIENS AGAINST WALKER'S INTEREST
IN THE PROPERTY AS OF JULY 2, 2020

To summarize what follows, these are the amounts that it appears will be owed, *at most*, on the liens against Walker's interest in the proceeds of the Property as of July 2, 2020 (except for additional attorney's fees that Democracy Capital and Atlantic Union might claim were incurred after, respectively, May 15, 2020, and March 16, 2020):

---

[1] The court's order disposing of the *Reconsideration Motion* leaves open whether summary judgment would be appropriate with respect to the $654,141.81 and permits further briefing of various issues.

| | |
|---|---:|
| IRS 1040 2012 | $187,380.10 |
| IRS 1040 2013 | $185,593.15 |
| Democracy Capital | $885,766.11 |
| Atlantic Union (legal fees disputed) | $231,692.65 |
| IRS 3d Q 2014 employment taxes | $21,286.78 |
| District of Columbia (income taxes) | $120,000.00 |
| Candela | $86,759.76 |
| IRS 1040 2014 | $21,636.12 |
| IRS 1040 2015 | $37,251.36 |
| IRS 1040 2016 | $11,070.04 |
| Direct Capital | $65,715.03 |
| IRS 1040 2017 | $3,769.62 |
| IRS 2d Q 2014 employment taxes | $14,763.46 |
| IRS 4th Q 2014 employment taxes | $15,440.17 |
| IRS 1st Q 2017 employment taxes | $73.56 |
| **Total** | **$1,887,485.38** |

In other words, it appears that Walker's share of at least $1,858,743.86 would probably suffice to fully pay all of the liens, if paid on July 2, 2020, except for the four IRS tax liens for which no notices of tax lien were filed. However, additional attorney's fees owed to Democracy Capital and Atlantic Union could result in other liens as well not being paid in full, particularly if an appeal is taken by Webster or the Ingram Group, substantially increasing the amounts owed to Democracy Capital and Atlantic Union by reason of attorney's fees incurred on appeal.

*Liens on Walker's Interest in the Property*. As to Walker's interest in the Property, there are various liens against her interest in the Property, filed with the D.C. Recorder of Deeds, that were held by the Internal Revenue Service ("IRS") and others. The *Summary Judgment Decision* directed the IRS, Democracy Capital, and Atlantic Union to file payoff statements

to which other parties could object within a 17-day objection period. Walker objected to the attorneys' fees asserted in the payoff statements of Democracy Capital and Atlantic Union. The court has objected Walker's objection to Democracy Capital's attorney's fees, and a hearing is set regarding Atlantic Union's attorney's fees.

In light of the payoff statements filed, and other information in the record, these are the asserted liens against Walker's interest in the proceeds of the sale:

1. **IRS**: tax lien filed on **August 20, 2014 at 8:32 a.m.**, for unpaid income taxes for the year 2012, standing at $186,613.77 as of June 2, 2020, and at $187,380.10 as of July 2, 2020;

2. **IRS**: tax lien **filed on August 20, 2014, at 2:49 p.m.**, for unpaid income taxes for the year 2013, standing at $184,834.13 as of June 2, 2020, and at $185,593.15 as of July 2, 2020;

3. **Democracy Capital Corporation**: Deed of Trust **filed on August 20, 2014, at 3:29 p.m.** securing a claim (the "Democracy Capital Loan"). for $885,766.11 as of July 2,

2020 (plus legal fees after May 15, 2020).[2]  Walker objected to the attorney fees asserted as part of this claim, but that objection has been overruled.

    4.  **Atlantic Union Bank** (successor to Access National Bank): Deed of Trust **filed on October 10, 2014**, securing a claim, originally for $150,000.00, standing at $231,692.65[3] as of July 2, 2020, plus legal fees after March 16, 2020.

    5.  **IRS**: tax lien **filed on July 21, 2015**, for the

---

[2]  This amount consists of:

| | |
|---|---:|
| Amount owed as of May 31, 2020, including legal fees billed through April 3, 2020 per payoff statement (Dkt. No. 189) | $876,741.31 |
| Interest at $107.95 per day after May 31, 2020, to July 2, 2020 | $3,454.40 |
| Attorney's fees (billed and unbilled) owed for April 4, 2020 through May 15, 2020, established by Exhibit A (Dkt. No. 207) at trial of May 28, 2020 | $5,570.40 |
| **Total** | **$885,766.11** |

Legal fees after May 15, 2020 (including for the hearing of May 28, 2020), are not included.

[3]  This consists of:

| | |
|---|---:|
| Amount owed as of May 31, 2020 with legal fees incurred only through March 16, 2020 | $230,533.29 |
| Interest at $36.23 per day after May 31, 2020, to July 2, 2020 | $1,159.36 |
| **Total** | **$231,692.65** |

Walker has objected to the $62,816.46 of legal fees and expenses included in the $230,533.29 figure and claimed to be owed as of March 16, 2020.

5

unpaid employment taxes for the period ending September 30, 2014, standing at $21,199.73 as of June 2, 2020, and $21,286.78 as of July 2, 2020.

6. **District of Columbia**: tax lien recorded on September 20, 2016, in the amount of $87,973.62 standing at $119,430.76 as of May 6, 2020, estimated to stand at no more than roughly $120,000.00 as of July 2, 2020.

7. **Candela Corporation**: *Judgment* **filed on June 26, 2017,** for a judgment of entered by the Superior Court of the District of Columbia on September 16, 2016, standing at roughly $86,759.76 as of July 2, 2020.[4]

7. **IRS:** tax lien **filed on June 29, 2017,** for unpaid federal income taxes for the year 2014, standing at $21,547.64 as of June 2, 2020, and at $21,636.12 as of July 2, 2020.

8. **IRS:** tax lien **filed on November 9, 2018,** for the

---

[4] I say "roughly" $86,759.76 will be owed because I have not ascertained what the interest rate will be for July 1 and July 2, 2020. Underpayment rates per annum under 26 U.S.C. § 6621(a)(2) were 4% for the period of April 1, 2016, to March 31, 2018, and 5% or 6% for the period of April 1, 2018, to June 30, 2020. In turn, based on those rates, the post-judgment interest rates under D.C. Code § 28-3302(c) for those periods were, respectively, 3% and 4%. Accordingly, the postjudgment interest on this judgment was at 3% from September 13, 2016, to March 31, 2018, and then at 4% from April 1, 2018, to June 30, 2020. That results in $10,475.04 being the amount of interest that will have accrued on the judgment as of July 2, 2020 (assuming that interest remained at 4% for July 1 and July 2, 2020).

unpaid income taxes for the years 2015 and 2016, standing at, respectively, $37,099.01 and $11,024.76 as of June 2, 2020, and $37,251.36 and $11,070.04 as of July 2, 2020.

9. **Direct Capital Corporation**: *Judgment Order* **filed on August 6, 2019**, for a judgment entered by the Superior Court on June 6, 2016, for which my calculations indicate that at most $65,715.03 will be owed as of July 2, 2020.[5]

10. **IRS:** tax liens for the following assessed taxes:[6]

- income taxes assessed for the year 2017 standing at

---

[5] The judgment judgment entered on June 6, 2016, was:

> in the principal amount of $50,575.69 (which includes application of partial payments made by Defendants), plus (i) prejudgment interest from January 1, 2015 through May 16, 2016 at the legal rate of 6% per annum in the amount of $738.76, (ii) post-judgment interest thereafter at the legal rate of 6% per annum until paid in full, and (iii) Plaintiffs reasonable attorney's fees and costs as provided by § 15 of the Agreement in the amount of $1,500.00.

Accordingly, the total judgment was for $52,814.45. Before it intervened, Direct Capital filed a motion for summary judgment in which it showed that with interest accruing on the $50,575.69 of principal, it was owed $63,938.33 as of February 5, 2020. With additional interest of $1,064.17 on the principal amount of $50,575.69, from February 5, 2020, to July 2, 2020, it will be owed $65,002.50 as of July 2, 2020.

[6] The transcripts of account for these assessments indicate that the taxes were assessed, and demand was made on Walker in each instance, which gave rise to tax liens under 26 U.S.C. § 6321, but the transcripts of account do not indicate that any notice of tax lien was filed with the Recorder of Deeds for any of these tax liens. Under 26 U.S.C. § 6323, recorded judgment liens and mortgage liens would take priority over these tax liens.

   $3,740.18 as of June 2, 2020, and $3,769.62 as of July 2, 2020;

- Employment taxes for the period ending June 30, 2014, $14,703.09 as of June 2, 2020, and $14,763.46 as of July 2, 2020,

- Employment taxes for the period ending September 30, 2014, standing at $21,199.73 as of June 2, 2020, and $21,286.78 as of July 2, 2020.

- Employment taxes for the period ending December 31, 2014, standing at $15,377.02 as of June 2, 2020, and $15,440.17 as of July 2, 2020.

- Employment taxes for the period ending May 31, 2017, standing at $73.25 as of June 2, 2020, and $73.56 as of July 2, 2020.

*Priority of Liens*. There is a dispute between the IRS and Democracy Capital as to whether the first two IRS tax liens take priority over Democracy Capital's lien. However, that dispute should prove to be academic: based on the court's current view of the case, there will be more than adequate funds to pay both the first two IRS liens and Democracy Capital's lien. Otherwise, it appears that the liens filed with the Recorder of Deeds will take priority based on the order in which they were filed, with each lien taking priority over any later-filed lien. The parties ought to come to an agreement in that regard.

II

FURTHER BRIEFING AND FILING OF PAYOFF STATEMENTS

With interest accruing on the various liens,[7] and with additional attorneys' fees being incurred by Democracy Capital and Atlantic Union if the litigation drags on, the amount that will flow to junior lienors diminishes with the passage of time. The sooner the court enters a final judgment directing distributions to senior lienholders, the more that will be available to pay junior lienors.

The court does not have an adequate record of what is owed on each lien, and the parties have not addressed the priority of the liens against Walker's interest in the sale proceeds.  No distributions can be made until those issues are resolved.  It thus behooves the parties to establish what is owed on each lien and to attempt to stipulate to the priorities of the liens.

Although Webster or the Ingram Group might seek a stay pending appeal, that would likely require the posting of a bond. Additional attorney's fees that Democracy Capital or Atlantic Union might incur on appeal, and additional interest accruing on senior liens would have to be paid from the sale proceeds after an unsuccessful appeal by Webster or the Ingram Group.  That would reduce what is available for junior lienors and result in damage to some junior lienholder or junior lienholders down the

---

[7] Webster may be earning interest on the sale proceeds, but the various liens may be accruing interest at a higher rate.

food chain unless a bond were available to cover such damage.

The various lienholders need to start thinking about what will happen if no bond is posted pending appeal, but an appeal is nevertheless pursued by Webster or the Ingram Group.  It might be appropriate to either stay distributions on junior liens in order that sufficient funds will be available to pay whatever additional attorney's fees are incurred by Democracy Capital and Atlantic Union pending appeal (and to which they prove to be entitled after disposition of the appeal) or to require such junior lienholders to provide collateral for payment of such attorney's fees or other adequate assurance that they will cough up any distributions they receive in order to assure payment of those attorney's fees.  If an appeal is pursued, Democracy Capital and Atlantic Union could set forth their worst-case projections of attorney's fees that would be incurred on appeal. The various lienors against Walker's interest in the sale proceeds could then attempt to come to an agreement regarding an arrangement to protect Democracy Capital and Atlantic Union in

that regard should the appeal be unsuccessful.[8] My suggestion is that a distribution order could stay certain distributions to some junior lienors pending the time for an appeal to expire, and could further provide that if an appeal *is* pursued, those distributions to such junior lienors would be stayed pending a determination of steps required to assure that Democracy Capital and Atlantic Union will recover their attorney's fees incurred on appeal.

                                III

It is thus

ORDERED that by June 24, 2020, the holders of each lien against Walker's interest in the sale proceeds shall file:

    (a) a payoff statement showing the amount owed on the lien, together with a per diem interest amount; and

    (b) a statement regarding which liens take priority of the lienholder's lien and which liens are junior in priority

---

[8] If Webster and the Ingram Group prevail on appeal and Walker is entitled to only 50% of the net proceeds of the sale, then Democracy Capital's lien would exceed that 50% share. The priority dispute between the IRS and Democracy Capital would no longer be academic. However, if Democracy Capital is entitled to priority, Democracy Capital's lien would exceed Walker's 50% share, and it will have already received more than that 50% share. The IRS would be required to disgorge to the bankruptcy estate any distribution it had received. There is no reason, as between the IRS and Democracy Capital, to stay the distributions on the IRS's first two liens and Democracy Capital's lien pursuant to any final order directing distribution pursuant to this court's preliminary view in the *Reconsideration Decision* concerning the respective shares of Walker and Barkats in the sale proceeds.

to the lienholder's lien. It is further

ORDERED that by July 8, 2020, other parties may file objections to:

> (a) the amounts claimed by any lienor's payoff statement (but Rondi Walker need not renew her objection to those attorney's fees of Democracy Capital that have already been adjudicated or her objection to the attorney's fees of Atlantic Union that are the subject of the hearing set for June 25, 2020); and
>
> (b) to the priority each lienor asserts for its lien.

It is further

ORDERED that the various holders of liens against Walker's interest in the sale proceeds shall confer regarding appropriate provisions in a distribution order to assure that if there is an appeal by Webster or the Ingram Group and no bond is posted by Webster or the Ingram Group, and distributions are not stayed *in toto*, then Democracy Capital and Atlantic Union are assured that they will receive payment of their reasonable attorney's fees incurred on appeal if the appeal is unsuccessful. It is further

ORDERED that as part of the scheduling conference set for June 25, 2020, at 1:30 p.m. on other issues, the court will address setting a schedule to address issues regarding the amounts owed on liens on Walker's interest in the sale proceeds

and the priorities of those liens, and the issue of a possible

hold-back if there is an appeal by Webster or the Ingram Group.

                                                             [Signed and dated above.]

Copies to: All counsel of record; Office of United States
Trustee.