The document below is hereby signed.

Signed: August 4, 2020



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| PIERRE PHILIPPE BARKATS, | ) | Case No. 14-00053 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| WENDELL W. WEBSTER, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 18-10021 |
| RONDI WALKER, M.D., *et al.*, | ) | |
| | ) | Not for publication in |
| Defendants. | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER OVERRULING
<u>PLAINTIFF'S RESPONSE OF JULY 6, 2020, TO ORDER TO SHOW CAUSE</u>

Pursuant to its *Memorandum Decision and Order Regarding Dr. Walker's Motion to Reconsider, Directing District of Columbia to Provide Details Regarding Real Estate Taxes Paid upon the Sale of the Real Property at Issue, and Setting Deadline for Parties to File Certain Responses* of June 9, 2020 (Dkt. No. 233)

("*Memorandum Decision and Order* of June 9, 2020"), the court gave Dr. Rondi Walker until June 23, 2020, to file a response to show cause why she ought not be bound by the conclusions of that *Memorandum Decision and Order* regarding the disposition of proceeds of the sale of the real property (the "Property") formerly owned by her ex-husband, Pierre Barkats and herself as tenants by the entireties before their divorce.  She filed no response.  Under the terms of the *Memorandum Decision and Order* of June 9, 2020, other parties then had until July 7, 2020, to file responses to the *Memorandum Decision and Order* showing cause, if any they had, based on any arguments not previously advanced, why the court ought not treat the distribution of proceeds to be governed by the *Memorandum Decision and Order*.  Only the plaintiff, Webster, filed a response, *Trustee's Response to June 9, 2020 Order to Show Cause* (Dkt. No. 271 filed on July 6, 2020).  Dr. Walker has opposed Webster's response and Webster has filed a reply.

I

WEBSTER'S RESPONSE LACKS MERIT

In his *Response*, Webster argues:

> 3. Pursuant to the Marital Settlement Agreement ("MSA"), Dr. Walker was to receive additional funds from the sales proceeds to pay off recent loans that she had taken for living expenses and Alek's college costs:
>
> $185,000 American Bank
> $148,000 Access National Bank Line of Credit
>         [Footnote: The Trustee has been advised

2

>              that this loan is the Atlantic Union loan
>              that has been  settled and will be paid
>              out of the sales proceeds. The current
>              pay-off amount is $230,181.71.]
>         $ 30,000 New Logic Loan
>         $100,000 Alek's school loans            Total $463,000
>
>    4. However, on the date of settlement (September 6, 2019), the American Bank loan no longer existed because it was paid off during a loan refinance with Democracy Capital at the increased amount of $324,659.08.
>
>    5. It is generally understood that after a refinance, the old loan is paid off, and a new one replaces it. In such case, the American Bank loan would have been replaced by the Democracy Capital loan, which was not included in the MSA as a loan to be paid out of additional funds from the sales proceeds. One can assume that under the MSA the parities [sic] intended that Dr. Walker receive additional funds to pay only the loans that existed upon the sale of the property. If the Court treats the American Bank loan as if it still exists then Dr. Walker will receive sales proceeds to pay the American Bank loan twice (once from the additional sales proceeds allocated to Dr. Walker to pay the American Bank loan and again from Dr. Walker's pro rata share of the sales proceeds for payment of the Democracy Capital loan).
>
>    6. The Trustee has already paid the Democracy Capital loan, which replaced the American Bank loan, in the total amount of $885,122.41, which includes the $324,659.08 used to pay-off the American Bank loan. The Democracy Capital loan was paid from Dr. Walker's pro rata share of the sales proceeds, and Dr. Walker should not be entitled to receive additional funds from the sales proceeds to pay-off the American Bank loan (which no longer exists) again.

Pursuant to the *Marital Settlement Agreement*, Dr. Walker was entitled to receive funds from the eventual sale proceeds to pay off the American Bank loan. However, the sale was delayed, and on August 1, 2014, she borrowed funds from Democracy Capital that, in part, she used to pay American Bank the amount of its

loan which stood at $324,659.08 upon being paid off on August 1, 2014.

The first fallacy in Webster's *Response* is his assumption that under the *Marital Settlement Agreement* the parties "intended that Dr. Walker receive additional funds to pay only the loans that existed upon the sale of the property." That assumption makes no sense. The *Marital Settlement Agreement* intended that Dr. Walker receive amounts equal to the payoff amounts owed on the specified loans, specifically, "funds to pay off recent loans she has taken for living expenses and Alek's college costs" including the American Bank loan. If Dr. Walker had used funds of her own to pay off all of the $463,000 in loans, the intention was that she would receive from the sale of the Property proceeds equal to whatever were the payoff amounts of the loans. There was no intention that Barkats receive a windfall of Dr. Walker not being entitled to any reimbursement from the sale proceeds for payoff amounts of the specified loans if Dr. Walker had made payment of the payoff amounts before a sale occurred.[1]

The $185,000 loan to Walker from American Bank was

---

[1] No one contemplated that it would take years to sell the Property, and this issue would never have arisen if the Property had been sold within a year or two of execution of the *Marital Settlement Agreement* on April 20, 2012. Dr. Walker did not enter into the loan transaction with Democracy Capital until August 1, 2014.

4

effectively incorporated into the Democracy Capital Loan at the increased amount of $324,659.08 to which the loan had grown, and became subject to the terms of the Democracy Capital Loan regarding such things as the interest rate and the maturity date. Dr. Walker was still obligated for the same amount of $324,659.08 (albeit to a different lender), and continued to be just as much in need of being reimbursed for the $324,659.08 payoff amount. The obvious intention of the *Marital Settlement Agreement* was that Dr. Walker would be made whole for loans she had "taken for living expenses and Alek's college costs." Viewed through the lens of this being a *Marital Settlement Agreement* incident to a divorce and addressing the respective needs of the two spouses, it makes no sense to treat Dr. Walker as no longer being entitled to be made whole with respect to having incurred the American Bank loan because she paid off the loan herself. What was paid remained a payoff amount for which she was entitled to be reimbursed. Although not labeled a form of support, that was the practical effect of the provision for her receiving the payoff amount of the loan. Paragraph 17 of the *Marital Settlement Agreement* provided:

> The parties agree that they are each fully capable of supporting themselves. Therefore, both parties waive all claims to spousal support, alimony, maintenance, or other financial support from the other party.

Dr. Walker's being fully capable of supporting herself necessarily included her being reimbursed for the payoff amount

5

of the American Bank loan, no small chunk of money.

The second fallacy in Webster's *Response* is his argument that Dr. Walker is receiving the same benefit twice, specifically, the argument that Dr. Walker is already receiving the amount of the American Bank loan (because it was effectively folded into the Democracy Capital loan, which has been paid from the sale proceeds), and ought not also have her interest in the Property increased by the amount of the American Bank loan.[2] There is no double benefit.  The *Marital Settlement Agreement* directed that Dr. Walker receive the payoff amount of the American Bank loan (which was paid off in the amount of $324,659.08) as part of her share of the proceeds in dividing up the Property.  In turn, upon that $324,659.08 portion of the proceeds being treated as her property, her creditors were free to pursue collection from that $324,659.08.  Treating the $324,659.08 payoff amount of the American Bank loan as an amount Dr. Walker was to receive from the proceeds of the sale, and paying off Democracy Capital's lien (for a loan that was used in

---

[2] As noted previously, in his *Response*, Webster argues:

> 6. The Trustee has already paid the Democracy Capital loan, which replaced the American Bank loan, in the total amount of $885,122.41, which includes the $324,659.08 used to pay-off the American Bank loan. The Democracy Capital loan was paid from Dr. Walker's pro rata share of the sales proceeds, and Dr. Walker should not be entitled to receive additional funds from the sales proceeds to pay-off the American Bank loan (which no longer exists) again.

6

2014 to pay off the American Bank loan) from Dr. Walker's share of the sale proceeds:

> is not a case of conferring the same benefit on Walker twice.  Instead, the court is fixing the interest of Walker in the sale proceeds (including funds to satisfy the $463,000 of loans) and then her creditors can chase the proceeds.  Democracy Capital is simply one of her creditors who happens to have a lien it is able to assert against the proceeds.

*Memorandum Decision and Order re Motions for Summary Judgment* (Dkt. No. 174, signed March 31, 2020, and entered April 1, 2020), at 25 n.13.

Paying Democracy Capital's lien is not a case of Dr. Walker receiving a doubling of the $324,659.08 part of her share of the proceeds.  She receives an allocation of that $324,659.08 as part of her share of the sale proceeds only once.  Once her interest in the proceeds is fixed as including that $324,659.08 amount that was the payoff amount of the American Bank loan in 2014, the Democracy Capital claim, secured by a lien on Dr. Walker's interest in the Property, attaches to the proceeds of the sale of that interest in the Property.  Payment of that lien does not increase Walker's interest in the Property.

II

DR. WALKER'S INAPPROPRIATE ATTEMPT TO INJECT NEW CLAIMS
INTO THE PROCEEDING VIA HER OPPOSITION TO WEBSTER'S RESPONSE

In her *Opposition to Trustee's Response*, Dr. Walker inappropriately strays from only addressing the arguments Webster raised in his *Response*.

7

A.

First, at paragraph 2 of her *Opposition to Trustee's Response*, Dr. Walker appears to argue that she is entitled to be reimbursed for interest and penalties that accrued on the $324,659.08 amount of the American Bank loan after it was effectively folded into the Democracy Capital loan that was used in part to pay off the American Bank loan, and she asserts that Webster and Democracy Capital ought to have provided proof of the amounts of such interest and penalties.  This contention comes too late.  Dr. Walker failed to file a response to show cause why she ought not be bound by the conclusions of the *Memorandum Decision and Order* of June 9, 2020, in which I concluded that with respect to the listed loans of $463,000, Dr. Walker was entitled to receive $654,141.81.  She has not sought leave to raise the contention out of time.  In any event, her *Opposition to Trustee's Response* is not the appropriate vehicle for belatedly attempting to raise this contention.  She ought to have limited her *Opposition* to addressing Webster's arguments in his *Response.*

Moreover, it was Dr. Walker's burden to provide proof regarding any interest and fees that would have accrued on the American Bank loan had it not been paid off.  As I noted in the *Memorandum Decision and Order re Motions for Summary Judgment* entered on April 1, 2020, at 30: "If Walker had not paid the

8

American Bank Loan, interest would have continued to accrue on the American Bank Loan for the five years that passed before Webster sold the Property, but it is impossible to discern from the current record the amount of interest that would have accrued." And in the accompanying footnote (*id.* at 30 n.15) I noted in part:

> The parties have not provided information regarding what amount would have been owed on the American Bank Loan at the time of Webster's sale of the Property had the American Bank Loan not been paid off as part of the Democracy Capital Loan transaction. Although the Democracy Capital Loan's promissory note is in the record, the record contains no information regarding the interest rate on the original unsecured loan from American Bank and the late fee for any late payment on that loan. Accordingly, the balance owed on the Democracy Capital Loan promissory note cannot be used to ascertain where the American Bank Loan would stand had the American Bank Loan not been paid off. Moreover, part of the $550,000.00 Democracy Capital Loan was for closing costs that had not existed with respect to the original unsecured loan from American Bank.

Democracy Capital was not a party to the American Bank loan, and Walker was the party in a position to supply information regarding the terms of the American Bank loan, assuming that she would be entitled to increase her share of the proceeds based on interest and fees that would have accrued on the loan had she not repaid it. She has provided no such proof.

    Dr. Walker's entitlement to receive $654,141.81 based on being reimbursed for the payoff amounts of the $463,000 in loans was based on these observations in the *Memorandum Decision and Order re Motions for Summary Judgment* at 31:

9

> I will adjust my prior calculations to take into account Walker's entitlement to at least $324,659.08 for the American Bank Loan, not just $185,000.00, and at least $199,482.73 on the Access National Bank Loan, not just $148,000. That is an increase of $191,141.81 regarding the specified loans of $463,000.00 which were to be paid in full, thus increasing the $463,000.00 figure to $654,141.81. [**Footnote:** This assumes that the other two loans specified, the New Logic Loan of $30,000 and Alek's school loans of $100,000) had remained the same and that the amounts listed were accurate as of the execution of the Marital Settlement Agreement. Without further evidence, the record justifies treating those assumptions as accurate. **End of footnote**.]

Dr. Walker has provided no evidence warranting any change to those observations.

### B.

Dr. Walker inappropriately seeks to inject a second claim into the proceeding via her *Opposition to Trustee's Response* where she states at page 2 that she "objects to paying the full amount of interest, without contribution from the Estate, based on the fact that the Trustee failed to sell the Property for nearly five years (2015 to 2019)." Webster served as trustee for

only four years and 31 days before he sold the Property.[3]  Dr. Walker does not identify what is the debt upon which interest accrued during the period that Webster served as trustee before selling the Property.  If it is interest on the Democracy Capital loan, Democracy Capital had a lien on Dr. Walker's interest in the Property, was entitled to be paid from the proceeds treated as belonging to Dr. Walker, and has already been paid.  If Dr. Walker is now suggesting that she is entitled to reimbursement from Webster for the interest that accrued on the Democracy Capital lien during the five years, she never advanced that claim before, and has not set forth a sound reason for being entitled to that relief.  Indeed, cutting against her claim is her having continued to reside in the Property rent free for the seven years after her divorce.

   Webster asserts that the delay in a sale being accomplished was due to the excessive price at which Dr. Walker insisted the Property be listed.  However, this squabble over who is

---

   [3] Although the involuntary petition commencing this case was filed in 2014, there was a misstep in accomplishing valid service on the debtor.  A final order for relief against the debtor was not entered under 11 U.S.C. § 303(h) until July 8, 2015, and Webster was not appointed to be the trustee pursuant to that order for relief until August 6, 2015.  Webster commenced this adversary proceeding on August 9, 2018, and obtained an order authorizing him to sell the Property free of both the debtor's interest and Dr. Walker's interest in the Property on October 22, 2018.  He proceeded to obtain an order in the main bankruptcy case permitting him to sell the Property free and clear of liens, but certain lienors (the so-called Ingram Group) initially withheld consent to his selling the Property. Webster's sale of the Property was closed on September 9, 2019.

11

responsible for the delay in a sale being accomplished has no impact on Dr. Walker's interest in the proceeds, or on who is entitled to be paid from the proceeds owned by Dr. Walker.

III

CONCLUSION

For all of these reasons, it is

ORDERED that the *Trustee's Response to June 9, 2020 Order to Show Cause* (Dkt. No. 271 filed on July 6, 2020) is OVERRULED.

[Signed and dated above.]

Copies to: All counsel of record; Office of United States Trustee.