The document below is hereby signed.

Signed: August 7, 2020



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| PIERRE PHILIPPE BARKATS, | ) | Case No. 14-00053 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| WENDELL W. WEBSTER, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 18-10021 |
| RONDI WALKER, M.D., *et al.*, | ) | |
| | ) | Not for publication in |
| Defendants. | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER REGARDING DISTRIBUTIONS OF SALE
PROCEEDS AND GIVING PARTIES 14 DAYS TO RAISE ANY FURTHER ISSUES

I assume the reader's familiarity with the court's prior decisions in this proceeding.  Pursuant to the hearing of August 5, 2020, the parties were in agreement that no further issues needed to be adjudicated.  This *Memorandum Decision and Order* points out an error in one of the court's prior decisions which

may have led parties to think that they did not need to identify any possible issues in order to protect their interests. Accordingly, I am giving the parties 14 days to identify any further issues that need to be addressed.

I

DIVISION OF OWNERSHIP OF THE PROCEEDS

The *Marital Settlement Agreement* provided for Dr. Walker to receive the payoff amounts of certain loans (that the court has fixed as standing at $654,141.81 in the aggregate). If a full price sale at $4,125,000 were achieved, the remaining proceeds were to be divided via a payment directly to Dr. Walker (which was projected to be $2,000,000), a payment to her of $400,000 to establish a Trust for Children, with the balance (after paying two HELOC liens) to go to Barkats. Paragraph 4 of the *Marital Settlement Agreement* provided for adjustment of Dr. Walker's $2,000,000 share, the Trust for Children's $400,000 share,[1] and Barkats' share of $557,000 by the percentage difference between the full listing price less costs of sale and the actual selling price less costs of sale. The actual selling price of $2,850,000 less $220,574.61 of costs of sale equaled $2,629,425.39 or 69.1954% of $3,800,000 (a full listing price less projected costs

---

[1] The *Marital Settlement Agreement* called for the establishment of the Trust for Children. That trust was formed on June 4, 2020, pursuant to a trust agreement titled The Barkats Walker Children's Trust. I will refer to the trust as the Trust for Children.

2

of sale). That results in reducing Dr. Walker's $2,000,000 share to $1,383,908.00; the Trust for Children's share to $276,781.60; and Barkats' share to $385,418.38 (before application of Barkats' share to the payment of the two HELOC liens).

Barkats' share was to be treated as being used to pay the two HELOC liens that stood at $487,186.91 when Webster paid them, and that exceeds Barkats' $385,418.38 share and will wipe out Barkats' receiving anything. That results in a shortfall balance of $172,592.93 of the two HELOC liens ($487,186.91 - $385,418.38 = $172,592.93) after treating the two HELOC liens as paid first from Barkats' $385,418.38 share.

As I previously ruled, if there was a shortfall, Dr. Walker's starting share of $1,383,908.00 and the Trust for Children's starting share of $276,781.60 are to be treated as paying the shortfall: Dr. Walker still retains the right to receive the payoff amounts of loans standing at $654,141.81 without any reduction (because the *Marital Settlement Agreement* contemplated that the loans would be paid in full). The shortfall of $172,592.93 must be borne proportionately by Dr. Walker and the Trust for Children, reducing their starting

shares, respectively, by $143,827.44 and $28,765.49.[2]

Accordingly, the proceeds (before taking into account liens against Dr. Rondi Walker's interest in the proceeds) should be allocated as follows:

> (1) Dr. Walker is entitled to receive a first share of $654,141.81 as the payoff amount of certain loans, an amount that was to be paid in full, with no adjustment based on the reduced sale price of $2,850,000.00 (versus the $4,125,000.00 full sale price contemplated by the *Marital Settlement Agreement*) or based on the two HELOC liens (because other shares are responsible first for paying the two HELOC liens, and suffice to do so).
>
> (2) Dr. Walker's second share of $1,383,908.00 of the proceeds must be reduced by:
>
>> (a) $179,305.95 of real estate taxes that she should have paid incident to occupying the Property and that, instead, Webster paid from the proceeds of the

---

[2] Dr. Walker's starting share of $1,383,908.00 plus the Trust for Children's starting share of $276,781.60 equals $1,660,689.60.  Dr. Walker's starting share of $1,383,908.00 is 83.333333% of that total of $1,660,689.60.  The Trust for Children's starting share of $276,781.60 is 16.666667% of the total of $1,660,689.60.  Consequently:

- Dr. Walker's share is responsible for 83.333333% of the shortfall of $172,592.93, which equals $143,827.44.

- The Trust for Children's share is responsible for 16.666667% of the shortfall of $172,592.93, which equals $28,765.49.

4

sale;[3] and

>    (b) $143,827.44 as her share that would have been necessary at the closing table to satisfy the $172,592.93 shortfall in paying the two HELOC liens (after applying Barkats' share towards paying the two HELOC liens).

This reduces this second share of Dr. Walker to $1,060,774.61.  She is thus entitled to receive in the aggregate $1,714,916.42 (the sum of $1,060,774.61 plus $654,141.81).

>    (3) The Children's Trust's share of the proceeds of $276,781.60 must be reduced by $28,765.49 as its share that would have been necessary at the closing table to satisfy the $172,592.93 shortfall in paying the two HELOC liens (after applying Barkats' share towards paying the two HELOC liens).  That reduces the Children's Trust share of the proceeds to $248,016.11.

>    (4) Barkats was entitled to receive $385,418.38 share but that has been applied to payment of the two HELOC liens,

---

[3] Barkats was responsible for paying the real estate taxes for 2012, but Dr. Walker was responsible for paying real estate taxes for later years.  She has not asserted that 2012 taxes were still owed when the sale closed.  Accordingly, she would have been required at the closing table of the sale to pay from her share of the proceeds the $179,305.95 of real estate taxes for years after 2012.  Put another way, she is required to replenish the pot of proceeds for the $179,305.95 of real estate taxes that Webster paid.

and Barkats is thus not entitled to recover any of the remaining proceeds. Accordingly, none of the remaining proceeds are property of Barkats' bankruptcy estate. Webster, as trustee of Barkats' estate, is not entitled to recover any of the proceeds.

(5) By reason of 11 U.S.C. § 363(j), Webster shall not be entitled to seek recovery of any compensation of himself as trustee from the proceeds of the sale being awarded to Dr. Walker and the Trust for Children.

II

CORRECTION OF CHART IN PRIOR DECISION

The *Memorandum Decision and Order Regarding Dr. Walker's Motion to Reconsider* of June 9, 2020 (Dkt. No. 233)[4] at 22-23, included this final conclusion (which is the basis for the analysis in part I, above):

> If the gross proceeds flowing to Barkats, after reduction of the $2,629,425.39 (sale proceeds net of closing costs) for:
>
> - Dr. Walker's share of $1,383,908.00 less real estate taxes (and accruals thereon owed for years after 2012);
>
> - loans to Dr. Walker in the amount of

---

[4] That *Memorandum Decision and Order* was titled in full:

*Memorandum Decision and Order Regarding Dr. Walker's Motion to Reconsider, Directing District of Columbia to Provide Details Regarding Real Estate Taxes Paid upon the Sale of the Real Property at Issue, and Setting Deadline for Parties to File Certain Responses.*

    $654,141.81; and

- the Trust for Children's share of $276,781.60

are insufficient to pay in full:

- any real estate taxes for 2012 (and any accruals thereon) still owed at the time of closing; and
- the $487,186.91 owed on the two HELOC liens,

then the shortfall shall be paid proportionately out of:

- Dr. Walker's share of $1,383,908.00; and
- the Trust for Children's share of $276,781.60.

However, in a chart in the same decision (*id.* at 21), I erroneously indicated that the result of Webster's sale of the Property would be:

| | |
|---|---:|
| Net proceeds of sale upon gross price of $2,850,000 less costs of sale (real estate commission, taxes, etc.) | $2,629,425.39 |
| Dr. Walker shall receive a pro rata share equal to $1,383,908.00 reduced for $179,305.95 in real estate taxes she incurred = $1,204,602.05 | - $1,204,602.05 |
| Plus funds to pay off recent loans she has taken for living expenses and Alek's college costs | - $654,141.81 |
| Plus funds to establish a Trust for Children | - $276,781.60 |
| Gross Balance to Mr. Barkats | $493,899.88 |
| Less, Payoff HELOC liens | - $487,186.91 |
| **Net amount to Mr. Barkats** | **$6,712.97** |

That the chart could not be correct has become apparent on further reflection because the distributions to Walker and the Trust for Children under the chart would have totaled **$2,135,525.46** (the sum of $1,204,602.05 + $654,141.81 + $276,781.60). The trustee only held proceeds after the sale of

7

**$1,962,932.53** which would not have sufficed to even pay Walker and the Trust for Children their distributions called for by the chart. Obviously $6,712.97 of proceeds would not have been available to pay to Barkats.

The chart would have been correct had it shown:

| | |
|---|---:|
| Net proceeds of sale upon gross price of $2,850,000 less costs of sale (real estate commission, taxes, etc.) | $2,629,425.39 |
| Less payoff of real estate taxes | - $179,305.95 |
| Less payoff two HELOC Liens | -$487,186.91 |
| **Net Available to Distribute** | **$1,962,932.53** |
| Dr. Walker shall receive a pro rata share equal to $1,383,908.00 but she is required to "replenish the pot" for the real estate taxes of $179,305.95, resulting in her receiving $1,204,602.05 (before sharing in paying any shortfall of Mr. Barkats' share to pay the two HELOC liens for which he was responsible) | - $1,204,602.05 |
| Plus funds to pay off recent loans she has taken for living expenses and Alek's college costs | - $654,141.81 |
| Plus funds to establish a Trust for Children (before sharing in paying any shortfall of Mr. Barkats' share to pay the two HELOC liens for which he was responsible) | -   $276,781.60 |
| Gross Balance to Mr. Barkats | $314,593.98 |
| Less, Payoff HELOC liens | -  $487,186.91 |
| **Shortfall in paying HELOC Liens** | **- $172,592.93** |

As noted already, the $172,592.93 shortfall would have to be charged, on a pro rata basis, to Dr. Walker's and the Trust for Children's respective starting pro rata shares under the *Marital Settlement Agreement* of $1,383,908.00 and $276,781.60, respectively. This results in:

- Dr. Walker's proceeds of $1,204,602.05 (her starting pro rata share of $1,383,908.00 less the real estate

8

        taxes of for which she was responsible) being further reduced by $143,827.44 to $1,060,774.61; and

- the Trust for Children's starting pro rata share of $276,781.60 being further reduced by $28,765.49 to $248,016.11.

Dr. Walker will thus receive $1,060,774.61 directly and $654,141.81 for loans, a total of $1,714,916.42, from which liens against that share must be paid.

    Barkats is entitled to receive nothing. The hearing of August 5, 2020, was held to identify any additional issues that needed resolution in the proceeding. Some parties may have failed to identify any additional issues needing resolution in the proceeding because the parties were relying on the erroneous projection in the flawed chart that Barkats was entitled to a $6,712.97 share. To the extent that reliance on my flawed prediction led any party to not identify at the hearing of August 5, 2020, any additional issues needing resolution in the proceeding, the party is free to identify them now.

III

PRIORITY AND AMOUNT OF LIENS
ON DR. WALKER'S SHARES OF THE PROCEEDS

  Webster has already paid the first three liens on Dr. Walker's $1,714,916.42 share of the proceeds: $885,122.41 to

9

Democracy Capital[5] and $372,626.03 to the United States (for two Federal tax liens). This reduces Dr. Walker's remaining share to $457,167.98. Webster is holding a total of $705,184.09, consisting of the $457,167.98 remainder of Dr. Walker's share and the $248,016.00 share of the Trust for Children.

There remain unpaid liens on Dr. Walker's remaining $457,167.98 share of the proceeds. Those liens have the following order of priority and are owed the following amounts based on payoff statements or other information noted in the footnotes:

| | |
|---|---:|
| Democracy Capital (per Dkt. No. 288) for further attorney's fees | $7,380.80 |
| Democracy Capital | $440.00[6] |
| Atlantic Union (per Dkt. No. 286) | $234,268.59[7] |
| Atlantic Union | $425.00[8] |
| IRS 3d Q 2014 employment taxes | $21,291.44[9] |

---

[5] Democracy Capital is still entitled to recover further attorney's fees in protecting its rights as a lienor in this adversary proceeding and in any appeal.

[6] At the hearing of August 5, 2020, it was agreed that Democracy Capital is entitled to recover an additional hour of attorney time for Mr. Metz's services (billed at $440.00 per hour per time entries previously submitted in litigating the earlier attorney's fees Democracy Capital sought).

[7] Plus $36.23 interest per day after August 5, 2020.

[8] At the hearing of August 5, 2020, it was agreed that Atlantic Union is entitled to recover an additional hour of attorney time for Mr. Laughlin's services, who in another case billed at $425 per hour: see *In re BG Healthcare Services, Inc.*, Case No. 19-11320-BFK (Bankr. E.D. Va.) at Dkt. No. 51, p. 5 (July 25, 2019). The record here does not show any increase since July 2019 in his billing rate.

[9] Plus $1.75 interest per day after July 6, 2020.

```
District of Columbia (income taxes)        $119,430.76[10]
Candela Corporation                        $117,333.52[11]
IRS 1040 2014                               $21,640.85[12]
IRS 1040 2015                               $37,259.50[13]
IRS 1040 2016                               $11,072.45[14]
Direct Capital                              $65,268.54[15]
IRS 1040 2017                                $3,770.41[16]
IRS 1st Q 2014 employment taxes             $13,858.13[17]
IRS 2d Q 2014 employment taxes              $14,766.69[18]
IRS 4th Q 2014 employment taxes             $15,443.54[19]
IRS 1st Q 2017 employment taxes                 $73.58[20]
```

The consequence is that Candela Corporation will receive a

---

[10] See Dkt. No. 197 at p. 2 (filed May 6, 2020). The District of Columbia has not filed an updated payoff statement showing accruals after May 6, 2020, and did not provide a per diem figure. The court is giving the District of Columbia until August 21, 2020, to file an updated payoff statement.

[11] Plus interest of $8.36 per day after July 17, 2020. See Dkt. No. 277.

[12] Plus interest of $1.78 per day after July 6, 2020.

[13] Plus interest of $3.06 per day after July 6, 2020.

[14] Plus interest of $0.91 per day after July 6, 2020.

[15] Plus interest of $8.31 per day after August 14, 2020. See Dkt. No. 276-1. This payoff statement is dated July 14, 2020, but indicates that the payoff statement figure of $65,268.54 is good through August 14, 2020. However, it then calculates interest as of "July 14, 2020," which may be a mistake if "August 14, 2020," instead, was the date to which interest was calculated. However, the sale proceeds will not suffice to pay Direct Capital any amount.

[16] Plus interest after July 6, 2020, at $0.31 per day.

[17] Plus interest after July 6, 2020, at $1.14 per day.

[18] Plus interest after July 6, 2020, at $1.21 per day.

[19] Plus interest after July 6, 2020, at $1.27 per day.

[20] Plus interest after July 6, 2020, at $0.01 per day.

payment of only a portion of its claim, and the liens junior to Candela Corporation's judgment lien will receive no payment.

Based on the flawed chart discussed in part II, above,[21] I previously predicted in the *Memorandum Decision and Order Regarding Liens Against Rondi Walker's Share of the Sale Proceeds* of June 9, 2020 (Dkt. No. 235) at 2-3 that Dr. Walker would recover $1,204,602.05 directly and $654,141.81 for paying off loans she had incurred, for a total of $1,858,743.86, with the result that Candela Corporation's judgment lien would be paid in full and some of the liens junior to Candela Corporation's judgment lien (including Direct Capital's lien) would likely receive payments. In fact, Dr. Walker will receive only $1,060,774.61 directly and $654,141.81 for loans, for a total of $1,714,916.42, with the result that Candela Corporation's judgment lien will not be paid in full and liens junior to Candela Corporation's judgment lien will not receive any payment. To the extent that reliance on my flawed prediction led Candela Corporation or any of the holders of those junior liens or Dr. Walker to not identify at the hearing of August 5, 2020, any additional issues needing resolution in the proceeding, they are free to identify them now.

---

[21] The chart appears in the *Memorandum Decision and Order Regarding Dr. Walker's Motion to Reconsider* of June 9, 2020 (Dkt. No. 233) at 21.

12

IV

DRAFT OF JUDGMENT

I attach hereto, but do not sign for issuance, a draft *Judgment*. I am delaying issuing the *Judgment* to give parties the opportunity to raise any further issues that they believe warrant not issuing the *Judgment* as currently drafted.

V

CONCLUSION

It is

ORDERED that within 14 days after entry of this *Memorandum Decision and Order*, the parties may notify the court of any further issues they believe warrant the court's not issuing a *Judgment* as currently contemplated.

[Signed and dated above.]

Copies to: All counsel of record; Office of United States Trustee.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| PIERRE PHILIPPE BARKATS, | ) | Case No. 14-00053 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| WENDELL W. WEBSTER, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 18-10021 |
| RONDI WALKER, M.D., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

<u>JUDGMENT</u>
[Draft *Judgment* Not Being Signed and Issued at this Time]

Pursuant to a *Memorandum Decision and Order re Distribution of Proceeds*, it is

ORDERED that ownership of the sale proceeds at issue is allocated in the following shares (prior to taking enforcing liens on the respective shares):

 (1) Rondi Walker, M.D. is entitled to two shares, one for $654,141.81 (representing payoff amounts of certain loans she had taken out) and one for $1,060,774.61, for an aggregate of $1,714,916.42.

 (2) The Barkats Walker Children's Trust, referred to also as the Trust for Children, is entitled to a share in the amount of $248,016.11.

 (3) Pierre Phillipe Barkats is not entitled to receive any share of the proceeds (other than his $385,418.38 share already applied towards satisfaction of two HELOC liens), and Wendell W. Webster, as trustee of Barkats' bankruptcy estate is not entitled to receive any of the remaining sale proceeds.

 (4) Wendell W. Webster shall not be entitled to seek recovery of any compensation of himself as trustee of Barkats' bankruptcy estate.

It is further

ORDERED that from Rondi D. Walker's remaining $457,167.98 share of the proceeds (the amount remaining after distributions on certain liens as previously authorized) the following liens shall be paid in the following order and the following amounts, including any additional interest accruals as indicated by the accompanying footnotes:

| | |
|---|---:|
| Democracy Capital (per Dkt. No. 288) for further attorney's fees | $7,380.80 |
| Democracy Capital for fees for hearing of 08/05/2020 | $440.00 |

| | |
|---|---:|
| Atlantic Union (per Dkt. No. 286) | $234,268.59[1] |
| Atlantic Union for fees for hearing of 08/05/2020 | $425.00 |
| IRS 3d Q 2014 employment taxes | $21,291.44[2] |
| District of Columbia (income taxes) | $119,430.76[3] |
| Candela Corporation | $117,333.52[4] |
| IRS 1040 2014 | $21,640.85[5] |
| IRS 1040 2015 | $37,259.50[6] |
| IRS 1040 2016 | $11,072.45[7] |
| Direct Capital | $65,268.54[8] |
| IRS 1040 2017 | $3,770.41[9] |
| IRS 1st Q 2014 employment taxes | $13,858.13[10] |
| IRS 2d Q 2014 employment taxes | $14,766.69[11] |
| IRS 4th Q 2014 employment taxes | $15,443.54[12] |
| IRS 1st Q 2017 employment taxes | $73.58[13] |

It is further

ORDERED that this *Judgment* is stayed for 14 days after its entry and pending disposition of any motion for a stay filed

---

[1] Plus $36.23 interest per day after August 5, 2020.

[2] Plus $1.75 interest per day after July 6, 2020.

[3] Plus additional amounts reflected by any updated payoff statement filed by August 21, 2020.

[4] Plus interest of $8.36 per day after July 17, 2020.

[5] Plus interest of $1.78 per day after July 6, 2020.

[6] Plus interest of $3.06 per day after July 6, 2020.

[7] Plus interest of $0.91 per day after July 6, 2020.

[8] Plus interest of $8.31 per day after August 14, 2020.

[9] Plus interest after July 6, 2020, at $0.31 per day.

[10] Plus interest after July 6, 2020, at $1.14 per day.

[11] Plus interest after July 6, 2020, at $1.21 per day.

[12] Plus interest after July 6, 2020, at $1.27 per day.

[13] Plus interest after July 6, 2020, at $0.01 per day

within that 14 days.

                                                    [Not being signed at this time.]

Copies to: All counsel of record; Office of United States Trustee.